**FILED**
**CLERK**
4/30/2021 5:41 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA     *     Case No. 19-CR-582(DRH)
    *
    *     Long Island Federal
    v.    *     Courthouse
    *     814 Federal Plaza
WAYNE MARINO,    *     Central Islip, NY  11222
    *
    Defendant.    *     March 25, 2021
    *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE ARLENE R. LINDSAY
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:         ALEXANDER MINDLIN, ESQ.
         KAYLA C. BENSING, ESQ.
         IAN C. RICHARDSON, ESQ.
         United States Attorneys Office
         Eastern District of New York
         610 Federal Plaza
         Central Islip, NY  11722

For the Defendant:         GEOFFREY R. KAISER, ESQ.
         Rivkin Radler LLP
         926 RXR Plaza
         Uniondale, NY 11556-0926

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

1          (Proceedings commenced.)

2                THE COURT:  Good morning, everyone.  It's Judge

3     Lindsay on the phone.

4                ALL:  Good morning.

5                THE COURT:  Can I have appearances, please.

6                MR. RICHARDSON:  Good morning, Your Honor.  Ian

7     Richardson, Alex Mindlin and Kayla Bensing for the United

8     States.

9                MR. KAISER:  Jeffrey Kaiser for the defendant, Wayne

10    Marino, Your Honor.

11               THE COURT:  All right.

12               THE DEFENDANT:  Good --

13               THE COURT:  I -- go ahead.

14               THE DEFENDANT:  Good morning.  Wayne Marino.

15               THE COURT:  All right.  Mr. Marino, you're able to

16    hear me clearly and see me as well?

17               THE DEFENDANT:  Yes, I am.

18               THE COURT:  All right.

19               Mr. Kaiser, you've -- I expect that you've consulted

20    with your client and he agrees to proceed by video and

21    telephone conference.

22               Is that right?

23               MR. KAISER:  Yes, Your Honor. That's correct.

24               THE COURT:  Okay.  Two things I want to cover.

25               Mr. Marino, because this case is before Judge

1    Hurley, you have an absolute right to ask Judge Hurley to take

2    your plea, since he is the judge that will ultimately decide

3    what's the appropriate sentence in this case.

4            Notwithstanding that right, do you consent to my

5    taking your plea?

6            THE DEFENDANT:  Yes.

7            THE COURT:  Okay.  And let me just for purposes of

8    the record make clear that very recently our chief judge

9    issued an administrative order finding that in the presence of

10   the COVID pandemic -- I don't know if we can call it a

11   pandemic but certainly epidemic, presents a threat to the

12   health and safety of the court personnel.

13           And for that reason in person proceedings are

14   discouraged, as it's found to be not in the interests of, as I

15   said, the health and well being of court staff, as well as the

16   individuals who might appear in court.

17           And for that reason to the extent that we're able

18   and absent emergent circumstances, or emergency circumstances,

19   we're going to proceed by video or whatever platform is

20   available, and telephone conference until the foreseeable

21   future.

22           So that said I want to have the defendant sworn in

23   for purposes of taking the plea.

24       (The defendant is sworn.)

25           THE COURT:  Mr. Marino, you've gone over what we

1    call a plea form. It's a series of questions to which you've

2    provided answers. I'm going to go over those questions with

3    you and the answers you now give will be subject to the

4    penalties of perjury.

5            Do you understand?

6            THE DEFENDANT:  Yes.

7            THE COURT:  Okay.  All right.  So let me start by

8    asking you how old you are?

9            THE DEFENDANT:  40 years old.

10           THE COURT:  And you're a citizen, correct, of the

11   U.S.?

12           THE DEFENDANT:  Yes.

13           THE COURT:  How far did you get in school?

14           THE DEFENDANT:  High school.

15           THE COURT:  And are you under the care of any kind

16   of doctor, physician or psychiatrist?

17           THE DEFENDANT:  No.

18           THE COURT:  And in the last 24 hours, have you taken

19   any narcotic drugs, medicine or pills or drug an alcohol?

20           THE DEFENDANT:  No.

21           THE COURT:  Have you ever been hospitalized or

22   treated for a narcotics addiction?

23           THE DEFENDANT:  No.

24           THE COURT:  And essentially what I'm trying to find

25   out is is your mind clear today?

1          THE DEFENDANT:  Yes.

2          THE COURT:  And you understand why you're here and

3     what's going on?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Mr. Kaiser, have you discussed this

6     matter with your client?

7          MR. KAISER:  I have, Your Honor.

8          THE COURT:  And are you satisfied he understands the

9     rights he'd be giving up by entering a plea of guilty?

10          MR. KAISER:  Yes, Your Honor.

11          THE COURT:  And do you have any doubt as to his

12     competency to go forward with a plea at this time?

13          MR. KAISER:  None, Your Honor.

14          THE COURT:  Mr. Marino, you have a right to plead

15     not guilty.

16          Do you understand that?

17          THE DEFENDANT:  Yes.

18          THE COURT:  And I want to review with you what would

19     happen should you persist in your plea of not guilty.

20          If you continue in your plea of not guilty, under

21     the Constitution and laws of the United States you'd be

22     entitled to a speedy and public trial.  Your attorney, Mr.

23     Kaiser, would be there at every stage of the proceeding to

24     defend you.

25          Do you understand?

1          THE DEFENDANT:  Yes.

2          THE COURT:  If there were a trial, you'd be presumed

3    to be innocent and the government would have to overcome that

4    presumption and prove your guilt by competent evidence and

5    beyond a reasonable doubt.

6          You wouldn't have to do a thing.  You wouldn't have

7    to prove you were innocent because you were presumed, and if

8    the government failed in its proof, the jury would have a duty

9    to find you not guilty.

10          Do you understand that?

11          THE DEFENDANT:  Yes.

12          THE COURT:  If there were a trial, the witnesses for

13    the government would have to come to court.  They would have

14    to testify in your presence.  Your attorney would have the

15    right to cross examine them.

16          He would have the right to object to evidence

17    offered by the government and he could offer evidence and

18    compel the attendance of witnesses on your behalf.

19          Do you understand that?

20          THE DEFENDANT:  Yes.

21          THE COURT:  At a trial, you would have the right to

22    testify if you wanted to, but you couldn't be required to

23    testify because under the Constitution of the United States

24    you have the right not to incriminate yourself.

25          So if you decided you did not want to testify, the

1    court would tell the jury they couldn't hold that against you.

2          Do you understand that?

3          THE DEFENDANT:  Yes, I understand.

4          THE COURT:  Okay. However, if you plead guilty and

5    the court accepts that plea, you'd be giving up your

6    constitutional right to a trial and the other rights I've

7    discussed.

8          There'd be no further trial of any kind or any right

9    to collaterally attack or at any time question the notion of

10   whether or not you're guilty. What would happen is the court

11   would enter a judgment of guilty as though you had been to

12   trial.

13         THE DEFENDANT:  Yes.

14         THE COURT:  Do you understand?

15         THE DEFENDANT:  I understand.   Yes, I understand

16   that.

17         THE COURT:  What you would retain, however, is the

18   right to appeal the sentence of the court, but even that is

19   limited in -- to the extent that if the court were to sentence

20   you to 210 months or less, you've given up right to even

21   appeal the sentence.

22         Do you understand?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Okay.  If you plead guilty, I'm going to

25   be asking you questions about what you did to satisfy myself

1   you're guilty of the charge to which you're pleading guilty

2   and you'll have to -- in that respect, you'll have to answer

3   my questions and acknowledge your guilt and in that way you'd

4   be giving up your right not to incriminate yourself.

5        Do you understand that?

6        THE DEFENDANT:  Yes.

7        THE COURT:  So are you willing to give up your right

8   to a trial and these other rights I've just discussed with

9   you?

10       THE DEFENDANT:  Yes.

11       THE COURT:  All right. I'll turn to the government

12  and ask you to briefly describe the (indiscernible) of the

13  plea agreement.

14       MR. MINDLIN:  Your Honor, this is ASA Alexander

15  Mindlin.

16       I'm appearing by phone because for some technical

17  reason I can't be seen on Zoom but I can see you. I just

18  wanted to make sure that you can hear me before I go on.

19       THE COURT:  I'm able to hear you.

20       MR. MINDLIN:  Okay.  Great.

21       So the plea agreement is, of course, before the

22  court. It's an agreement to plead guilty to Count 1 of the

23  indictment, charging a violation of 18 USC Section 1349,

24  conspiracy to commit wire fraud.

25       As Your Honor noted, the plea agreement includes a

1    waiver of appeal in the event the court imposes a term of

2    imprisonment at or below 210 months.

3          It also includes an agreement to forfeit a certain

4    sum of money, or equivalent property, and a date by which that

5    will happen.

6          THE COURT:  Okay.  Let me just review with you, Mr.

7    Marino, some of the elements -- well, the elements of the

8    crime of which you are charged.

9          You are apparently agreeing to plead guilty to Count

10   1 of the indictment, which is conspiracy to commit mail and

11   wire fraud.

12         Essentially, that requires that the government prove

13   that you, together with another, entered into an agreement to

14   commit wire fraud.

15         And wire fraud is established when there is a scheme

16   or artifice to defraud or to obtain money or property by

17   materially false and fraudulent pretenses or representation

18   and that you knowingly and wilfully participated in that

19   scheme to defraud with knowledge of its fraudulent nature, and

20   that in executing this scheme you used or caused the use of

21   interstate modality, such as the wire transfers, the Post

22   Office (indiscernible) affect interstate commerce, so -- or

23   international wires to some extent may be part of it.

24         So those are the elements that the government would

25   have to prove beyond a reasonable doubt.  I want to make sure

1    you are aware of those.

2            Have you discussed the crime to which you're going

3    to plead guilty with your counsel?

4            THE DEFENDANT:  Yes, I have.

5            THE COURT:  Okay.  And do you understand the charge

6    in the indictment to which you intend to plead guilty?

7            THE DEFENDANT:  Yes, I do.

8            THE COURT:  Okay.  Let me review with you so you're

9    clear on this what the penalties are with respect to that

10   count.

11           The maximum term of imprisonment is 20 years. The

12   minimum term is zero.  The maximum supervised release term is

13   three years, which would follow any term of imprisonment.

14           The count you're intending to plead guilty to has a

15   maximum fine of either the greater of $250,000 or twice the

16   gross gain or gross loss in the (indiscernible).  Restitution

17   is mandatory in the full amount of each victim's loss to be

18   determined by the  court.

19           There is a $100 mandatory special assessment and

20   there are other penalties that could apply, including criminal

21   forfeitures, some of which are included in your agreement with

22   the government.

23           Do you understand what the penalties are?

24           THE DEFENDANT:  Yes, I do.

25           THE COURT:  Okay.

1          THE DEFENDANT:  Yes.

2          THE COURT:  Now have you discussed with Mr. Kaiser

3   the sentence?

4          THE DEFENDANT:  Yes, I have.

5          THE COURT:  Okay.  And I want to make sure you

6   understand the sentencing guidelines.

7          They're not mandatory.  They're something the court

8   will consider in determining what is the appropriate sentence

9   in this case.

10         And the court will consider the nature and

11  circumstances of the offense, your criminal history and any of

12  the characteristics, as well as some statutory factors which

13  I'm going to review with you.

14         When the court considers what's an appropriate

15  sentence for you or anyone it will -- the court, Judge Hurley

16  in this case, will impose a sentence sufficient but not

17  greater than necessary to reflect the seriousness of the

18  offense, to promote respect for the law, to provide just

19  punishment for the offense, to avoid deterrence as to other

20  criminal conduct, to protect the public from further crimes by

21  you or others involved in the scheme.  To provide you with

22  needed educational or vocational training, medical care or

23  other correctional treatment.

24         Those are some of the things that the court will

25  also -- will consider, as well as any cooperation that the

1    court might become aware of as a result of any letter that the

2    court -- that the government might submit to the court's

3    attention.

4            Do you understand that?

5            THE DEFENDANT: Yes, I do.

6            THE COURT: Okay. And has your attorney gone over

7    these factors I've just described with you?

8            THE DEFENDANT: Yes. Yes.

9            THE COURT: Okay. I'm sure that the government and

10   during conversation with your counsel had discussions about

11   what might be a likely sentence in this case.

12           I just want to make sure that you understand that

13   whatever estimates you might have been given by your attorney

14   or even the government in this case during those discussions,

15   while they might be good educated guesses because

16   (indiscernible) very experienced in the law, what's

17   (indiscernible) as much as you can say about it. They're

18   educated guesses.

19           And it's really up to Judge Hurley to determine what

20   is an appropriate sentence in your case, mindful of those

21   factors and the guidelines as I've just (indiscernible).

22           Do you understand that?

23           THE DEFENDANT: Yes, I understand that.

24           THE COURT: Okay. So finally, do you realize that

25   if the sentence turns out to be more severe, and this is why I

1    said what I just said, than what you might have expected based

2    on those discussions or anything that might have occurred up

3    to this point, you'll still be bound by your guilty plea.

4                    Do you understand that?

5                    THE DEFENDANT:  Yes, I understand that.

6                    THE COURT:  All right.  Do you have any questions

7    you want to ask me or your attorney at this time?

8                    THE DEFENDANT:  No, not at this time.

9                    THE COURT:  So are you ready to plead to Count 1 of

10   the indictment?

11                   THE DEFENDANT:  Yes.

12                   THE COURT:  All right.  Mr. Kaiser, do you know of

13   any legal reason why he should not be permitted to go forward

14   with his plea of guilty?

15                   MR. KAISER:  No, Your Honor, I do not.

16                   THE COURT:  Mr. Marino, are you satisfied with your

17   lawyer up to this point?

18                   THE DEFENDANT:  Yes, I am. I am satisfied with my

19   lawyer.

20                   THE COURT:  Okay.  I take it you believe he's doing

21   a good job for you. Is that right?

22                   THE DEFENDANT:  That is correct, yes.

23                   THE COURT:  So with respect to Count 1 of the

24   indictment, which charges that on or about August 1st, 2006

25   and November 7th of 2019, those being approximate dates within

1    the Eastern District of New York that you, together with

2    others, knowingly and intentionally conspired to devise a

3    scheme, an artifice to defraud one or more persons, in this

4    case the U.S. government agencies and contractors, and private

5    sector customers, and that you did that to obtain money and

6    property from them by means of materially false or fraudulent

7    pretenses or representation, that is by falsely stating that

8    merchandise was made in the United States, and falsely stating

9    merchandise was made by Aventura Technologies, and that in

10   connection with executing that scheme to defraud

11   (indiscernible) you, and/or others.

12          And this took place in a post office, an authorized

13   depository of mail and caused to be sent by the U.S. Postal

14   Service and private commercial carriers one or more things,

15   namely, the shipment of merchandise and this was done to

16   transmit.

17          And as part of this there was transmissions by wire

18   communications and interstate commerce, all in connection with

19   the execution and the scheme to defraud.

20          With respect to that count, which charges a

21   violation, as I described, of Title 18 United States Code

22   Section 1343, how do you plead?

23          THE DEFENDANT:  Guilty.

24          MR. KAISER:  I apologize, Your Honor.

25          Just to clarify it's a violation of 1349, the

1    conspiracy.

2              THE COURT:  49.  I wrote the wrong statute.  You're

3    right.  1349.  How do you plead?

4              THE DEFENDANT:  Guilty.

5              THE COURT:  Are you entering that plea of guilty

6    voluntarily and of your own free will?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Has anyone threatened or forced you to

9    plead guilty?

10             THE DEFENDANT:  No.

11             THE COURT:  Other than the agreement with the

12   government which we've described on the record, has anyone

13   made any promises to you that caused you to plead guilty?

14             THE DEFENDANT:  No.

15             THE COURT:  Has anyone promised you what your

16   sentence will be?

17             THE DEFENDANT:  No.

18             THE COURT:  Well, now you can tell me in your own

19   words what you did in connection with the count that you're

20   pleading guilty to.  What did you do?

21             THE DEFENDANT:  Between in or about 2006 and 2019 I

22   worked at Aventura Technologies in New York in the area of

23   technical support and network configuration in those roles.

24             I performed security testing on certain products,

25   including security cameras, known as IP cameras and I

1  communicated with customers located in other states with -- in

2  order to provide technical support for products sold by the

3  company.

4        While working at Aventura I understood that the

5  company obtained its products, including IP cameras, and

6  related equipment from China and that in selling the products

7  was deceiving customers, including the government about the

8  origin of those products by falsely claiming that they were

9  made in the United States and taking steps to conceal the

10  involvement in Chinese suppliers in amateur business

11  operations.

12        Despite this knowledge I did not disclose the

13  deception to the customers for which I provided technical

14  assistance and agreed to take other actions at the request of

15  Aventura's management, which served to facilitate the

16  deception, including on several occasions communicating with

17  suppliers in China in order to arrange the removal of Chinese

18  language and branding from its products being sold to

19  customers under the Aventura name.  I knew this was wrong.

20        THE COURT:  Let me ask you where were your

21  facilities?  Where were they located?

22        THE DEFENDANT:  Hauppauge, New York.

23        THE COURT:  And were you involved in the mailing --

24        THE DEFENDANT:  Or Commack, New York, too. I mean,

25  they moved a couple of times.  Sorry.

1          THE COURT:  I just want to establish it's in the

2    Eastern District.

3          Were you aware that -- I would imagine that you were

4    aware that as part of this that product was moving through the

5    U.S. Post Office as well?

6          THE DEFENDANT:  Yeah.  Yes, I was aware of that.

7          THE COURT:  All right.  I'll hear from the

8    government.  What's the government's proof in this case?

9          MR. KAISER:  Your Honor --

10          MR. MINDLIN:  Your Honor --

11          MR. KAISER:  Go ahead.

12          MR. MINDLIN:  Your Honor, the government would put

13    in evidence, among other items, communications between the

14    defendant and Aventura's suppliers in China and elsewhere and

15    communications between the defendant and Aventura as

16    customers, both in New York and in other states within the

17    U.S. as well as within the U.S. government, as well as

18    communications in which the defendant evidenced an awareness

19    that products were being shipped within the United States and

20    from China to the U.S.

21          THE COURT:  And let me just ask, when you say you

22    were going to put in communications, were they recorded, or

23    communications, or just witness testimony?

24          MR. MINDLIN:  These would be -- I'm sorry, Your

25    Honor. Among other things, vis-a-vis emails between the

1   defendant and other people in other states and abroad.

2          THE COURT:  And how are you going to prove the

3   origin of this product?  I mean, was it self evident that it

4   was from China, since it sounds like there was some attempt to

5   conceal the original?  How would you prove origin?

6          MR. MINDLIN:  Well, the government would prove the

7   origin in part because it intercepted many of these products

8   as they crossed the U.S. border and established that they were

9   unchanged between when they were sent from China and when they

10  were trans shipped by Aventura to Aventura's customers.

11         The government would also put into evidence emails

12  from the defendant indicating his knowledge that these

13  products originated in China and that that was being

14  concealed.

15         THE COURT:  Okay.  Then based upon the information

16  that I've been given I find that you, Mr. Marino, that you're

17  acting voluntarily, I find that you fully understand your

18  rights and the consequences of his plea and that there is a

19  factual basis for it.

20         So I accept your plea of guilty to Count 1 of the

21  indictment and will recommend that Judge Hurley do the same.

22         Is there anything else that I should address with

23  respect to Mr. Bennett?

24         MR. KAISER:  Not from the defendant, Your Honor. Not

25  from my perspective.

1          THE COURT:  All right.  From the government?

2          MR. MINDLIN:  No, Your Honor.  Not from the

3     government, Your Honor.

4          THE COURT:  All right.  Then thank you, everyone.

5     Good luck to you, Mr. Marino.  I have nothing further.

6     Everyone stay well.

7          MR. MINDLIN:  Thank you.

8          MR. KAISER:  You, too, Your Honor.

9        (Proceedings concluded.)

10

11     I, CHRISTINE FIORE, Certified Electronic Reporter and

12     Transcriber, certify that the foregoing is a correct

13     transcript from the official electronic sound recording of the

14     proceedings in the above-entitled matter.

15

16     *Christine Fiore*

17     _____          April 29, 2021

18        Christine Fiore, CERT

19

20

21

22

23

24

25